[Civ. No. 20005. Second Dist., Div. Three. July 15, 1954.]

Estate of HERMAN L. ROWLEY, Deceased. GERRY ROWLEY et al., Appellants, v. GRAND LODGE OF IOWA OF ANCIENT, FREE AND ACCEPTED MASONS et al., Respondents.

Slane, Mantalica & Davis, Lloyd Tevis and Lewis C. Tee-Garden for Appellants.

Kimpton Ellis, James C. Hyne, Walter H. W. Weiler, Dudley R. Furse and Ogden, Crocker & Steelman for Respondents.

WOOD (Parker), J.—Herman L. Rowley died on February 19, 1951. His holographic will was admitted to probate on March 26, 1951. On December 21, 1951, petitioners herein, who were not named as beneficiaries in the will, filed a petition for a decree determining heirship, and they alleged that they were first cousins of decedent and entitled to all his estate. Under the decree, it was determined that the devisees and legatees named in the will were entitled to distribution of the estate in the respective portions designated for each of them in the will. Petitioners appeal from the decree.

The record on appeal consists of the clerk's transcript, which includes the petition, statements of claims of beneficiaries under the will in answer to the petition, findings of fact and conclusions of law, and the decree.

The will may be summarized generally by stating that it provided that in the event the wife of the testator survived him all his property was to be held in trust for her, and at her death the trust property was to be distributed to the several legatees named in the will.

Decedent's wife, Myrtie Rowley, died on October 31, 1950 (approximately three and one-half months before the death of decedent).

Appellants contend that since the wife did not survive the testator the will was not effective to dispose of any of his estate, and he died intestate.

The will, made on May 1, 1950, was in words and figures as follows:

"Los Angeles, Cala    5/1/50

I, Herman L Rowley, being of sound and disposing mind and memory, Do hereby make publish and declair this My last Will and Tustement, hereby revolking all wills and codicils at any time executed by me.

#1  I direct that my just debts shall be paid.

#2  In event my wife Myrtie Rowley, shall survive me, then and in that event, I hereby give and bequath all my property both real and personal of any kind or nature to her.  I direct that the Bank of Amer. Trust and savings Assn. of Los Angeles, Cala to act as Trustee who shall keep and manage the property, and use the income and as much of the principle as is necessary to keep her in the position in Life to which she is accustomed to, Care for her and in Case of illness to provide all she needs and desires and final internment, which is to be had in Forrest Lawn Memorial Park, Glendal in Crypt #5185 or 5191 and No. A. 199964 which are bought and paid for in full. Regarding the farms in Iowa and personal property there, I direct Ira Johnson of Perry, Iowa as executor or in Case he is not available, I desire that Donald Johnson his son act as executor, Who shall also supervise the renting, and operation of the farms, pay the taxes and reasonable amount for repairs and upkeep, ect. and remit the proceeds to the Trustee in Cala. with true and accurate report of the proceedings, who will pay him for services and reimburse him for necessary expense, that he is put to.  I also desire that in Iowa the farms be kept in tact and not desposed of until the death of my wife.  At her death, I direct the Trustee to sell and convert into cash all real and personal property, making the final disbursements and Close the Estate and Close the Trust.

A. I give, devise and bequeath to Alice Hubbell 10,000.00.

B. I give, ~~and~~ devise and bequeath to Marshall Ammerman $10,000.00.

(C)—I give, devise and bequeath to Don Ammerman 5000.00

D—I give, devise and bequeath to Allan Ammerman 5000.00

E. I give, devise and bequeath Lee Ammerman $5000.00

F. I give, devise and bequeath to Ralph Carpenter 5000.00 Marion Iowa

G. I give, devise and bequeath to H. C. Ammerman 5000.00 Carmel, Cala.

H. I give, devise and bequeath to Vera Hand, 5000.00 Berrien Springs, Mich.

Any objections or contest made by any of the *beneficaries* herin shall exempt them from any inheritance, what so ever. And the amounts are net to the Beneficiaries, all inheritance tax to be paid out of my Estate.

G—I devise, and bequeath all the resdue to the Grand Masonic Lodge of the State of Iowa, to be used as follows. 150,000.00 to be used for the construction and equipment of a Masonic home in Perry, Iowa for worthy and needy Masons in good standing, to be known as the Rowley Memorial home. The balance for investment and income therefrom to be used to assist in maintaining and operation of the home. In making this gift to the Grand Lodge, I direct that it shall be supervissed and handled by officiers of the Grand Lodge of Iowa, together with the officiers of the Local Lodge of Perry, who shall act as trustee. It is my desire that this home be operated as a non-profit institution and any charges made to occupants shall be sufficient only to mainatain and operate the home. In the Event the Grand Lodge of Iowa, has not made formal plans and ready to proceed with the building as directed in three years after the death of my wife, Then I direct that the money that they have or will receive as foresaid shall revert to the Grand Lodge of State of Okla. with a home to be built at Cordell, Okla. The Home to be built supervised and controlled, the same as mention heretofore.

I nominate and appoint as my executor in California O. E. Wesenberg, of the Farmers Mers. Bank Long Beach and in event he is not *avaiable* I desire

Georgia Kelley of 2973 Maple Court, San Deigo Cala. to act as Executor. I desire Ira Johnson of Perry, Iowa to act as my Executor in Iowa and in Case he is not *avaiable,* I desire Donald Johnson of Perry, as my Executor in Iowa who shall out the provisions of this Will.

Herman L. Rowley<br>5-1-50''

The court found that decedent left no spouse, brother, sister, nephew, niece, descendant, or ancestor surviving him.

Appellants argue that by the words and physical construction of the will the decedent intended intestacy if his wife predeceased him; that the testator was only concerned with his estate in the event of the survival of his wife; that the contingency of the wife's survival affects the remainders and since the contingency did not occur, the life estate and the remainder interests failed to vest and the remainders were defeated.

With respect to the words and physical construction of the will, appellants assert that the decedent numbered only two paragraphs, that is "#1" and "#2," and he made the purported bequests in subdivisions of paragraph "#2." They assert further that since the first part of paragraph "#2" contained the provision that if the wife survived him the trust should be created, and that since subdivisions A, B, C, D, E, F, G, H, and G, which contained the remainder bequests, immediately followed such first part, the remainder bequests were not independent of the life estate but were connected with it and followed it in "unbroken continuity" and, like the life estate, were "contingent upon happening of the event [survival of wife] which is a condition of the life estate."

Rules for the interpretation of wills are stated in *Estate of Lefranc,* 38 Cal.2d 289, at pages 295 and 296 [239 P.2d 617]. Some of those rules are: (1) "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible. (Prob. Code, § 101.)" (2) "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy. (Prob. Code, § 102.)" ▮ (3) "The making of a will raises a presumption that the testator in-

tended to dispose of all his property.  ■  Residuary clauses are generally inserted for the purpose of making that disposition complete, and these clauses are always to receive a broad and liberal interpretation, with a view of preventing intestacy as to any portion of the estate of the testator, and this general rule is in harmony with the declaration· of our code that the provisions of a will must be construed, if possible, so as to effect that purpose.''

Section 140 of the Probate Code provides: ''The death of a devisee or legatee of a limited interest before the testator's death does not defeat the interest of persons in remainder who survive the testator.''

Section 142 of the Probate Code provides: ''A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with. Nothing vests until such condition is fulfilled, except where fulfillment is impossible, in which case the disposition vests, unless the condition was the sole motive thereof and the impossibility was unknown to the testator or arose from an unavoidable event subsequent to the execution of the will.''

In *Estate of Raymond*, 96 Cal.App.2d 808 [216 P.2d 515], it was said at page 814: ''There is a further rule, however, to be followed in the interpretation of the provisions of a will and that is that the instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention and the meaning of the particular words, phrases and provisions shall be subordinated to such scheme, plan or dominant purpose.''

■  It is not to be supposed that a testator who writes a will, without legal aid, will use the same niceties of language, punctuation, and arrangement of paragraphs as would be used by an expert draftsman (see *Estate of Soulie*, 72 Cal. App.2d 332, 334 [164 P.2d 565]), and ''the words must be given their ordinary grammatical sense'' (*Estate of Clary*, 98 Cal.App.2d 524, 526 [220 P.2d 754]).  ■  ''No particular words are necessary to show a testamentary intent.'' (*Estate of Taylor*, 119 Cal.App.2d 574, 579 [259 P.2d 1014].)

Appellant's position seems to be that the testator intended that the specific bequests and the bequest of the residue should be effective only if the wife survived him; that his sole motive in writing the will was to create a life estate for her, and if she did not survive him so that that could be done

then he would be satisfied with a disposition of his property under the rules of succession. In other words, they seem to argue that if she survived him for any period of time, however short that period might be, then he wanted to give specific amounts of money to certain persons named in the will, and he wanted to give the residue to the Grand Lodge of Masons in Iowa (or Oklahoma) to be used in building and maintaining a home for needy members of the lodge, which home would bear his name; but if she did not survive him, he did not want to make those specific requests or the bequest for the purpose of building the memorial home. According to the argument of appellant, the result of Mr. Rowley's efforts in writing the will of approximately 700 words in his own handwriting, containing the several specific directions as to the disposition of his property, was that he died intestate. Under a rule of interpretation above referred to, there is a presumption, from the writing of such will, that Mr. Rowley intended to dispose of all his property. Also, under another rule, an interpretation which will prevent total intestacy is preferred.

In his will, immediately after making the provision for a trust for his wife during her life, Mr. Rowley gave the direction that "At her death, I direct the Trustee to . . . convert into Cash all real and personal property making the final disbursements and Close the Estate and Close the Trust." Then, immediately after that provision as to final disbursements and closing the estate and the trust, he stated specifically and at some length the manner in which he wanted all his property distributed. It seems clear that the testator intended to provide for his wife, if she survived him, by placing a limitation on her estate, and then providing for a complete distribution of his property which remained after the termination of her estate. In the *Estate of Gregory*, 12 Cal.App. 309 [107 P. 566], the will gave the residue of the estate to a certain person in trust to hold during the life of the testator's wife, and the will provided that upon the death of the wife the residue of the estate then remaining be paid to the testator's grandchildren. The wife died prior to the death of the testator. In that case the court said at page 311: "The real question in the case is, Did the testator intend to dispose of the whole of his estate, and is his will susceptible of such construction? We think so, and it is plain from the provisions of the fifth paragraph of his will above quoted [paragraph giving residue in trust] that the testator constituted the resi-

due of his estate into a trust fund, and provided that upon the death of his wife whatever was left of this trust should go to the two grandchildren named. ■ The fact that the wife never lived to become the beneficiary of the trust created in her favor is no reason for holding that the subsequent provision of the will directing the disposition of the fund should be defeated.'' In the present case, the trial judge's interpretation of the will was that the testator intended that, upon his death and in the event his wife predeceased him, his estate vest (in) and be distributed to the various beneficiaries named in his will. The interpretation of the trial court was correct.

The decree is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 8, 1954. Edmonds, J., was of the opinion that the petition should be granted.